**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Arthur Norrie WAKE, Respondent,**

No. 1998–SC–0991–KB.

Supreme Court of Kentucky.

Feb. 22, 2001.

See also: 860 S.W.2d 295.

---

## *OPINION AND ORDER DENYING REINSTATEMENT*

This matter comes to us on an application for reinstatement by Arthur Norrie Wake pursuant to SCR 3.510.

Wake resigned under terms of disbarment on September 2, 1993. He had been convicted of mail fraud, a violation of 18 U.S.C. § 1341; misappropriation of funds, a violation of 18 U.S.C. § 666; and conspiracy, a violation of 18 U.S.C. § 371. This criminal conduct, as established by the convictions, violates SCR 3.130–8.3. Wake's convictions arose while he was serving as Fayette County Attorney. He participated in a scheme where Fayette County Attorney's office employees were given excessive pay raises, and then channeled the extra funds back to Wake. This money was then used to pay off Wake's campaign debt for his election as Fayette County Attorney.

We stated in the order granting Wake's disbarment that "[h]is convictions are of such a nature as to put in grave issue his moral fitness to continue the practice of law." *Wake v. Kentucky Bar Association,* Ky., 860 S.W.2d 295, 295 (1993). We further ordered:

1. Wake shall not be permitted to engage in the practice of law in the Commonwealth of Kentucky until such time as the Supreme Court of Kentucky enters an order reinstating his membership in the Kentucky Bar Association.

2. Wake shall not file an application for reinstatement for a period of five years from September 2, 1993.

3. Any application for reinstatement shall be governed by SCR 3.520 [which has since been deleted], or any subsequent amendment thereto regarding reinstatement in case of disbarment.

4. All disciplinary proceedings against Wake shall be terminated and the costs thereof shall be paid by Wake in accordance with SCR 3 .450(1) and SCR 3.480(3) in the sum of $7.70.

5. Pursuant to SCR 3.390, Wake is hereby ordered to provide notice to any clients he is currently representing of his inability to provide further legal services, to notify all courts in which he has matters pending of his resignation under terms of disbarment, and to provide the Director of the Kentucky Bar Association with a copy of all such letters.

*Id.* at 295–96.

Wake applied for reinstatement on November 17, 1998. Pursuant to SCR

3.510(4), his application was referred to the Character & Fitness Committee ("Committee"), and a full investigation followed, in accordance with SCR 2.040. On January 18, 2000, following conclusion of the investigation, the Committee held a formal hearing pursuant to SCR 2.050. The Committee focused on five issues during the hearing:

> (1) Has Mr. Wake shown by clear and convincing evidence that he has complied with every term of the Order of Suspension of Disbarment?;
>
> (2) Has Mr. Wake shown by clear and convincing evidence that he is worthy of the trust and confidence of the public?;
>
> (3) Has Mr. Wake presented clear and convincing evidence that he possesses sufficient professional capabilities to serve the public as a lawyer?;
>
> (4) Has Mr. Wake shown by clear and convincing evidence that he is of good moral character?;
>
> (5) Because of the position of trust he held and events leading to disbarment, would Mr. Wake's readmission to the Bar bring the Bar into disrespect or disrepute?

█ The Character and Fitness Committee found Wake to have proven by clear and convincing evidence that he complied with the first issue regarding his terms of disbarment. However, on all other issues, the Committee split 2–2. The two members of the Committee who found Wake had not presented clear and convincing evidence on the latter four issues focused on his lack of candor. They cited several instances where Wake had a "real reluctance to acknowledge publicly his role in the kick back scheme." In addition, these two members of the Committee found it revealing that when they asked two of his long time friends if he had ever admitted any wrongdoing, he had not. Further, these two Committee members felt that, as an elected public official who breached the public trust, the standard for readmission for Wake must be higher than for other readmissions. His application must be supported by evidence that is clear and convincing in every respect, or the readmission is likely to cast a dark shadow over the profession. Therefore, because the Committee was divided on whether Wake met the conditions necessary for reinstatement, the Committee was unable to recommend that Wake be reinstated.

The matter was then referred to the Board of Governors of the Kentucky Bar Association ("Board"). The Board heard oral arguments on the case and reviewed the record before taking a vote on Wake's application for reinstatement. With one member abstaining, the vote was zero (0) to approve reinstatement and eighteen (18) to deny reinstatement. Therefore, the Board recommends to us that the application for Wake's reinstatement be denied.

█ We have considered the entire record, including the recommendations of the Character & Fitness Committee and Board of Governors, and are not convinced that Wake is entitled to reinstatement at this time. "The crux of a reinstatement proceeding is that the applicant be completely candid with the reviewing authority." *Skaggs v. Kentucky Bar Association*, Ky., 954 S.W.2d 311, 314 (1997).

Consequently, pursuant to SCR 3.510, the application for reinstatement is hereby DENIED.

All Concur. COOPER, J., in result only.

ENTERED: February 22, 2001
/s/ Joseph E. Lambert

CHIEF JUSTICE